did. It's really not that hard to pronounce, but nobody likes to be our combination. May please the court. My name is Philip Saverin. I represent the appellants in this case. The question presented is whether sheriffs who cannot release individuals without a court order nevertheless have a constitutional duty, and I emphasize constitutional duty in this context, to investigate the legitimacy of the judicial process in order to fulfill their obligations as sheriffs. We believe the answer is decidedly no, and for that reason we ask the court to reverse the decision, contrary decision, of the district court. I know the court is familiar with the record, but just a very brief chronology I think would help focus the argument. After a vicious crime spree in 2005, Mr. Harris came before the court and was ordered held without bond. That was in April 2006. It wasn't until October 2010, about three and a half years later, that after several continuances and evaluations at the mental hospital, the circuit court found him to be incompetent and ordered the state of Mississippi, and again I emphasize the state of Mississippi, to petition for his civil commitment in the Chancery Court. It's important to note that the criminal charges remained pending. The circuit court made that crystal clear. That same month, later that same month, the Chancery Court transferred the case, Chancery Court where the civil commitment proceeding had been filed, transferred Mr. Harris' case back to the circuit court, saying that it lacked jurisdiction. Why? Because criminal charges were still pending. Didn't that mean he should be released? You started off by saying there was no court order saying he should be released, but when the criminal case, he was found incompetent, it issued an order saying he should remain in custody until the determination of said civil proceedings, and then the civil proceeding is dismissed, so at that point shouldn't he have been released pursuant to the court order? I think it could be read as saying that should be held pending his civil commitment, because until the civil commitment, then they'd have to be held by Clay County. I think that, I understand the words, but I think that could be interpreted that way. But the court said there's not going to be civil commitment. I would also say that in the same breath, the Chancery Court did not dismiss the case, but sent it back to the circuit court where the county was, the sheriff was still under the order to hold without bond. I thought the civil case was dismissed for lack of jurisdiction. The civil case was dismissed for lack of jurisdiction. Right, and the court order, it said hold him until the determination of said civil proceedings. The civil proceeding had ended in Chancery Court, hadn't it? It was dismissed for lack of jurisdiction, so yes, we can say that that's a dismissal for lack of jurisdiction, but I'm not trying to parse words, Your Honor. What I'm saying is that... What order allowed him to be held, given that the order had said hold him until the determination of the civil proceedings? The order, the original order telling him to hold without bond. Right, that's the initial detention hearing, so... Correct. So in that theory, any time someone's denied bond and held in custody, they could be held even if they've served their prison sentence. I mean, there's always going to be that initial order, but don't later orders supersede it? Separate order by another court, Your Honor. What I would say there is that... I thought it was the criminal court judge who said he should remain in custody until the determination of the civil proceeding. Yes, it was the circuit court who said that. That order that dismissed, the Chancery Court order that dismissed and transferred him back to the circuit court saying that criminal charges are still pending, went nowhere. It did not go to the circuit court. Does this have anything to do with... I mean, in Mississippi, I know there have been different episodes of jurisdictional spats between the Chancery Courts and circuit courts. Circuit courts are general jurisdiction, Chancery Courts are limited jurisdiction. Did the dismissal for lack of jurisdiction in the Chancery Court have anything to do with the evolution of that law? I just can't remember... Yeah, so that's an interesting point because if you look at the deposition testimony of the prosecutor, Forrest Allgood, what he said is that the East Mississippi State Hospital, which is where they would send people who were declared incompetent, would not accept individuals who had criminal charges pending. And so the Chancery Court took the position that we cannot commit someone unless the criminal charges are dismissed. The circuit court said no, we're not going to dismiss criminal charges and the judges had an ongoing spat about that and in fact, what Mr. Allgood said, the prosecutor, is that the reason that the state didn't do anything in terms of the Chancery Court's erroneous dismissal for lack of jurisdiction is because he didn't want to get between two judges, he didn't want to risk his prosecutorial immunity. Couldn't it have gone to the circuit court as a civil commitment proceeding, irrespective of the criminal charges pending? That's what normally happens in Mississippi. The Chancery Court dismisses because there's a conclusion that it ought to be in circuit court. Well, that case recommences, right? It's more like a transfer. I don't know the answer to that question to be honest with you standing here, but what I can say and what I was responding to Judge Costa's comments is that the Chancery Court's order went nowhere. It went into the Chancery Court's file, did not go to the circuit court, did not go to Clayton County. For all we know, it didn't go to the district attorney, although you would think the district attorney was there and would be able to seek reconsideration that time or file an appeal at that time. The issue is that you've got someone who has committed vicious crimes, they're bouncing back and forth between two courts and we can't have a sheriff releasing someone in that situation without a clear order that says this person is due to be released. How do you square that with the Yowk case? Because that appeared to be what was going on there. The court system was dropping the ball, was the argument that they made in Yowk and Judge Riebley said no way. Well, it's a little different, Your Honor, where you have the prosecutor and the state who has the responsibility to either commit someone who has been declared incompetent or release them. So your position is even if today this defendant was still in there with being found incompetent and no civil commitment proceeding against him, 20 years from now he could still be sitting there and the sheriff would have no responsibility. We're talking about a constitutional responsibility. And what the district court cobbled together, and I say that with all due respect, is a duty to confirm, which has not existed previously, does not exist in the Constitution, and I would resort to the very established rule that the substitute process cannot be a font for tort law. It may be that there was something that the sheriff could have done. The other thing is the district court came up with several things, none of which we think that the sheriff was obligated to do, and I might point out here that it's a very clear record that both Sheriff Huffman went to the prosecutor who told him there's nothing that can be done, that the case is being continued and it's spat between two judges, that as soon as the new district attorney came into place, Sheriff Scott went immediately to him. And I think this is important enough, I'd like to read from the appellee's brief in this case on page 19. And this is a quote, it said, shortly after Coleman, which is the new district attorney, took office, defendant Scott immediately reached out to Coleman to inform him that Harris was being indefinitely held at the Clay County Jail and requested assistance. And Allgood, Allgood is a prosecutor, as Allgood made it clear he was going to leave Harris in jail forever without a trial. So there are multiple things, there are multiple parties here. We have the district court, I'm sorry. What about the declaration of diligence, of this diligence declaration that the sheriffs did that said, okay, well we don't know where he is? We have a slip of paper, it's found at document 6359, I believe. It's a form that someone has filled out. It's not even a signature. It's a form someone has filled out. It's dated October 2010, the same month, I might add, when the circuit court and the chancellery court are going back and forth about what to do with Mr. Harris as far as a civil commitment. There's absolutely nothing to indicate that this had any effect whatsoever on Mr. Harris's detention in this case. And to the extent that the district court relied on this at all, this is not, it's not a constitutional violation. And again, I must emphasize, I understand the unfairness of Mr. Harris being held without having the civil commitment proceeding going forward, but we're talking about constitutional obligations. Summary judgment, so that has to be construed in favor of the plaintiff, right? We can... Document of the sheriff saying, well, how big is this jail? How many people are... I think a little over 100. I believe the evidence was about 100 and it has some state prisoners as well as what I recall in the record. But what I would say again is that you've got a slip of do with what happened to Mr. Harris or why he was detained this period of time. He was detained because the court did not do the job, because the prosecutor did not do the job. And again, I emphasize that both Mr. Lutt, Mr. Huffman and Mr. Scott went to Mr. Allgood, the prosecutor, and said, we don't need to have someone who's insane, who's incompetent in our jail. It's his fault. We were told there was nothing that Mr. Allgood, or Mr. Allgood said there's nothing he could do. In fact, Mr. Allgood said he discouraged Mr. Billy Perkins, who was the jail administrator, and that's at page 4233 in the record, from getting between the judge because he said you don't get between two judges. As soon as there was a new prosecutor, they went again. In fact, Mr. Scott, the new sheriff, said I brought every speck of paper I had on the file because I wanted to make sure that something was done about moving Mr. Harris's case along. And finally, the new prosecutor wakes up and goes to the court and says we need to have him committed. And even at that point, that's in 2016, he then is evaluated and the process goes forward. And when the state finally moves to no-prose the case, what does the court do? He dismisses it without prejudice so that criminal charges could still be brought. So it isn't until 2017 that the charges are actually dropped. So I would like in my short time that's remaining, unless there's more questions on that, I know that's the key issue, but in the short time remaining since this is my opening, I did want to touch on the second claim, acknowledging that the court would have to accept pendant appellate jurisdiction over the question of the forced medication. And what I would say here is there's one thing that I overlooked in the brief, and I apologize for it. It is clear in the record, in fact, from the plaintiff's brief as well, and that is that Mr. Hoffman was no longer the sheriff in February 2012 when this incident took place. So he could not be, his conduct could not be at that point as a final policymaker. And on the medical claim, the forced medication claim, it's the district court granted qualified immunity to Mr. Hoffman, so it would be solely against the county. So I think on that- But this allows pendant jurisdiction against a county in our circuit on a qualified immunity appeal. Well, it's a general, I cited the Escobar versus Martinez case where it says that if there's an interest of officer immunities, an officer having to go to trial at that point, that that can be grounds. I'm not saying that it's inextricably intertwined with the other one because it's not, but, and I realize that's within the court's discretion. The plaintiff's argument, that Mr. Harris's argument is premised on him having been a free man after the chancellor court's order requiring informed consent. And yet in the complaint, paragraph 118, Mr. Harris says very clearly that he was not confident to give consent for medication. Mr. Hoffman did not decide to medicate him. That was prescribed by doctors because he was expressed, exhibiting aggressive behaviors, smearing fecal matter, verbally aggressive, agitated, pacing. Just as in the Bastilla case that I cited, just as medical personnel cannot be held constitutionally responsible for excessive force where they're complying with instructions from police officers, the converse or opposite of that would stand as well. To hold Mr. Hoffman as a final policymaker, which he wasn't at that point, liable for medical decisions would not make sense as well. So unless, I see my time is out, but I'll . . . You say time for it, but . . . Yes. Mr. Brown? Thank you and may it please the court. I learned this morning that there is also a Fifth Circuit State Court of Appeals, and unfortunately I made my way there. I am finally here, so thank you all for having me be here. I first argued in my brief that in this particular instance, this matter shouldn't even be before the court. And the reason why that is is because when the district court made its decision, they made this decision stating that this is a question of fact as to why and it is very clear from this particular case that while there was no case law that existed at that time regarding a situation where a man who was deemed mentally incompetent, who would never regain his competency in the foreseeable future, whose civil commitment case was dismissed, should have sat in jail indefinitely. That's never happened before in any particular case in this entire country. And there's a reason for that, because it is absolutely plainly obvious that that is a constitutional violation. What about counsel's argument that the sheriffs are not the repository of that violation? They didn't have the power to let him free. You know, I've heard that argument, and there's a case called Sheffield v. Reese, and this is the state of Mississippi, 28 South 2D 745 at 748, 1947. And what this case made very clear was that an officer should need no authority other than that applied under the Constitution and the statutes here and before discussed to inform him that he should not hold a citizen in custody for an unreasonable length of time. Correct. And that is a case that, and that is Mississippi law. So what do the sheriffs know? The sheriffs knew that you cannot indefinitely hold a person just because you want to. They have the authority and the right. And I think it's also important to talk about the... What would they have done? They would have had to release him pursuant to Jackson v. Indiana. That is the law of the land. Jackson v. Indiana says that if someone is deemed incompetent and will have no foreseeable ability to regain their competency, at that moment you must do one of two things. Commit him, or you shall release him. Is the sheriff able to make those determinations? We're not going to have sheriffs releasing people without court orders. Well, here's the court order. The court order was this, and I think that Judge Costa touched on this, and I think he really did. The competency order specifically stated that the court or the sheriff's department can only hold this individual pending a civil commitment proceeding, and that outcome. That case was unequivocally dismissed. Well, unequivocally, but when a chancery court dismisses for lack of jurisdiction because there's a finding that, well, it should really be in circuit court, I don't know that that's unequivocal, is it? Well, and what I will say is, yes, because at that point, it was unequivocally dismissed, so the next action that has to be taken is one of two things. The district attorney either goes back and files a renewed motion to commit Mr. Harris, or at that point, they must release him because that is the only standing order that exists. Why isn't the district attorney here? Qualified immunity for prosecutorial immunity. What I think, if you look at the record, it is much more nefarious than it was described earlier. When we talked about this declaration of diligence that was signed on October 24th, October 25th, 2010, that was related to a KPIS that had also been issued before. And if you look at the record as to what Sheriff Huffman says, he testifies that, yes, I knew that I couldn't hold him for the issues related to this particular case where he was deemed incompetent, but there was this other order out there. And that other order he was talking about was this KPIS that was issued, and that had remained under seal. And so what ended up happening was, they knew he was in their custody, and they signed a declaration of diligence saying, we can't find him, we don't know where he is, so he never appeared to the court on that particular matter. And that is the order Laddie Huffman, in his testimony, was attempting to argue, that's why I was holding him. And when the district court saw that, they said, this is pretty outrageous. You had a district attorney who made this argument, well, you know, the courts were fighting, and Laddie Huffman, he went to the judge, well, you know what the judge said in this case later on? And I cite this in my brief. The judge in this case said, the circuit court had no clue Mr. Harris was sitting in jail. So that is in direct contradiction to what Laddie Huffman is saying. What we also know Mr. Allgood did is, when someone, a jailer at this facility, went to him and said, hey, you know, we've got this guy, he's here indefinitely, what do you want to do? Should I go to the court? He tells this guy, well, you can do what you want, but I'd advise you not to. So this idea that there were all these different steps that could have been taken, if they were so concerned, why didn't somebody go down to the court immediately and raise this as an issue? But somebody would have been the prosecutor, correct? Not necessarily, no, not necessarily. And the reason? Prosecutorial immunity, absolute? Well, it was granted, for some reason, that's an argument for another day. In my opinion, there was no case law out there where you had an issue. There was nothing that can't be appealed until there's a final ruling. Correct, correct, that's exactly right. That's an issue I plan on addressing. And I think another very important issue here, and this is something that has never... Prosecutorial immunity is absolute, it's not qualified. You have a prosecutor who's off duty doing something, they don't have immunity, but if it's within the scope of their duties, it's an absolute immunity, just like judges have. Correct, and we're trying to argue, did he at some point step outside of this very narrow scope? And I think what the district court said was, as egregious as we think this might be, assuming that we take the plaintiff's argument as fact, there's really nothing you can do because he was still operating as a prosecutor at that point. And there's very limited, there are very limited remedies for that outside of a bar complaint. I'm just grappling, I guess, with what the sheriffs were supposed to do. Of course, you've got the Yacht case that addresses it, that was a sheriff, and our court was pretty clear on that, but if they don't go to court, the prosecutor goes to court. And the judges are the judges, they're there, but what are the sheriffs supposed to do? I think we're skipping a step. It's not about going to court. At this point, there was an order, there was a competency order, it was very clear. And I understand that one might argue, well, you could re-bring a civil commitment case, but that wasn't the case. You could have done that, but you also would have had to go back, exactly what the next DA did, they went back to the criminal court, they addressed the issue, they actually got a confinement order so that he could go back to the chancery court to address this issue. That's what should have happened. Short of that, you have to let somebody build, because it is their constitutional right. You can't disregard Jackson v. Indiana. And again, O'Connor Donaldson addresses this same thing. And what does a sheriff have to do? The sheriff, yes, he releases somebody, he looks at that order, and he says, all right, well, there isn't a pending civil commitment case, I know it's been dismissed. So at that point, hey, I've got no other obligation, but I am a defender of the Constitution, I have to abide by the Constitution. The state of Mississippi has said this, and Sheffield v. Reese, Jackson v. Indiana, O'Connor v. Donaldson, they have all said, you have to release this individual. So yes, the onus is on this sheriff. And I think what's also important, in his testimony, he's like, well, I'm not going to release him. I was under the impression that at some point, he will be tried. The whole point of this, to really understand what was really happening, why you have a declaration by sheriffs, both Sheriff Hussman and Deputy Sheriff Scott, they both signed it. They made a false representation to the court saying we don't know where this guy is. The point was to keep him there long enough so possibly he would gain his competency. At some point, when Allgood was no longer there, Scott finally got the courage to talk to somebody else. And that was really sort of a covering his own self. He knew he had done this for so many years, along with Laddick Huffman, they run into the issue of, all right, well, maybe we don't have somebody who's going to necessarily force us to continue with this unconstitutional act. Let me talk to the next district attorney. And that's why this man was eventually released. I think that what we really have to look at here is, you cannot indefinitely hold an American citizen in a prison where the case law is clear he cannot be held. And that onus is on that sheriff. And it's been very clear. So I would argue, they keep saying there's no court order. There was this commitment proceeding. It didn't exist. There's something that's very important about this case that I addressed in my brief that's never been addressed before in this country. It's also this question, and I'm not sure if this is a question that the court's going to answer today. I hope that it does. What was Mr. Harris? Was he a free man or was he a pretrial detainee? From reading the case law before this and looking and taking common sense, you would say he would have to be a free man. And why would that be? Mr. Harris was once a pretrial detainee until he was deemed incompetent to stand trial. By being deemed incompetent to never able to regain his competency, at that point, Mr. Harris could never be held accountable for any particular crime. And it would be against his due process. It would be a due process violation to try him. So what the courts have said is, at this point, a person who could never be tried, who will never be held accountable for any alleged crimes, you're innocent before proving guilty. Commit that person, and you release them. So if Mr. Harris can never be tried for a crime, and he was not committed, and he was supposed to be released, that makes Mr. Harris a free man. He is not a pretrial detainee because he could never stand trial. And so the rights of a pretrial detainee are significantly less than that of a free person. And it's our Constitution, and while some people might not like that, that is what our Constitution says. And I hope that this court can make a determination, finally, that if you are fundamentally incompetent and you can never stand trial, you are not considered a pretrial detainee. And I thought that this would be the only case that we'd see in the United States, but apparently we've discovered another case like this in Mississippi that's somewhat similar. And it's a challenge, and we have to address what are the rights of these individuals. And this goes into the second aspect of this case as it relates to the enforceable administration of anti-psychotic drugs. Again, I argue this is a question of fact, but even if you look at the facts here, if we know Mr. Harris is a free person or not a pretrial detainee, we know that you cannot forcefully administer psychotropic drugs to this individual. I mean, we've had all these debates about vaccines and everything now. This case is very clear. You cannot force an American to take anything that they do not want to take. But let's just argue that he was a pretrial detainee. I thought if someone's incompetent, they can administer drugs to help them regain confidence. Well, and that's another question. So that was a question that was brought up in a bunch of briefing in this case. Mr. Harris was deemed mentally incompetent to stand trial. He was never determined incompetent to be able to understand whether or not he could or could not take drugs. That was a very big, and when we briefed it through the doctors that originally were in this case, and we resolved that matter, it had become clear that yes, he was never deemed mentally incompetent to determine whether or not he could actually take drugs. In fact, they said that he was competent to say yes or no to whether he could take a medication, but he could not understand his legal process. So that's why he was deemed incompetent. So even with that said, there are circumstances in which you can't, right? You can't just forcibly administer it because you want to get them to become competent. That you cannot do. You can only administer those drugs in extreme circumstances. And in this case, there is a question of fact as to whether or not that those circumstances existed. And if you look into the record, what you'll find is that that day that Mr. Harris had his first forced administration of drugs, Mr. Harris wasn't fighting anybody. Mr. Harris was minding his business. That was the day they wanted to do it. And the person who facilitated that was Sheriff Laddie Huffman, who had just stepped down, and he was a jail administrator. And it was him who put his hands around Mr. Harris's neck and said, you're going to take this medication. And so he was a jailer. He was a jail administrator. He was absolutely a policymaker. He was involved in the forcible administration of this drug. And even during this time, the two guards threatened Mr. Harris with continued punishment if he didn't take these drugs. So in this instance, while Harris had some times where he had episodes where he would be belligerent, it wasn't at that time. And also pursuant to Washington v. Harper, there wasn't even any policy here that said, here's how you do this. Do we have to go to court order? Do we follow these policies by this particular doctor? They simply did not exist. But again, this was a question of fact that has to be disputed, and it's inappropriate for an interlocutory appeal. Unless the court has any more questions. Thank you, Mr. Bryant. Thank you so much. Mr. Saverin? All right. A few comments I'd like to make, and hopefully they won't be too disorganized. I'm not here to say that at all that Mr. Harris should have been held in jail without being civilly committed. The question is, where's the constitutional lines? What are the constitutional obligations? And I think my adversary said very clearly that there is no case law setting that out. And we are here, after all, in a qualified immunity appeal, and so how can you have clearly established law if there's no case law setting that out? Of course, as you know, the Supreme Court has carved out some exceptions where they say that the violation was so obvious that even if it's never occurred before, that they will still impose liability. Yes, that's true. But the question is, is it obvious? It would be obvious, I think, to the state and to the prosecutor that you dropped the ball here big time. But a question of whether or not it would be obvious to the sheriff or someone in the jailer's position about this order from the Chancery Court that transferred it back to the Circuit Court. I'd like to point out two things. One of them, it didn't go anywhere. It's not as if this was handed to the sheriff and the sheriff said, no, I don't think I can release him. This didn't go anywhere. The Chancery Court— Then a judge says, oh, I'm going to allow a bond, I'm revoking— It would be— In the federal system, the marshals are monitoring the docket. That's how they know when to detain someone, when to release them. How does that happen in this county? It would be sent to the sheriff. A copy would be sent to the sheriff is how it would go. Okay. So the sheriff did see it. No, it did not go. There's no evidence that it went there. There's absolutely no evidence that this went to the file and didn't go anywhere. I thought you said they are normally sent. The sheriff's not— They should be copied. They should be copied on them, is what should happen. A lot of things should have happened that didn't happen in this case. I'd also point out, and I don't want to start parsing words again, but it says, the defendant shall remain in custody until the determination. Determination means, I would say, if I was reading this, I would say, on the merits. And as Judge Wilson said, it was transferred back, and there still was a need for the civil proceeding. Was there ever a civil proceeding brought in the circuit court? I didn't see that there was ever a case for civil commitment pursued. No. No, it was not. The state dropped the ball there as well. And the question of the prosecutorial immunity is something that may come before this court once there's been a final judgment or it's certified or however it may get up to this court. But the other claims, there were claims against the defense attorney who did nothing and said he did nothing. Those have been settled. There are claims against the medical defendants, the nurse and the doctor. Those have been settled. When my adversary talked about the sheriff, Huffman, said, I knew I couldn't hold him, but I had this slip of paper. That's nowhere in the record. That's just not there. Similarly, it's not there that Huffman was the leading person that held him down to give him the medication. I don't want to go into detail on the evidence, but this was, again, prescribed by the doctor because of the behaviors that I stated before, and that is in the record. Interesting that my adversary said that it was Mr. Allgood, again, the prosecutor, who said to the jailer, don't bother. This is between the judges. They're just going to have to work it out. The forced medication, the question of that, I just wanted to read Paragraph 118, again, of the Fourth Amendment complaint, which is the operative one here. Quote, because Harris was mentally incompetent, he did not have the power to consent to the administration of these anti-psychotic drugs, close quote. So I think that, in and of itself, says that if, under Washington v. Harper and the other cases, if, in fact, the county could be constitutionally accountable for the medical personnel's decision, that case says and those other cases say that's for the medical personnel to decide. Again, I just want to end by saying that the question is a constitutional obligation, not a question of negligence in court law, and if, in fact, the sheriff of the county had released Mr. Harris based on what's at best a very ambiguous circumstance, there could have been other complications for the sheriff, criminal misdemeanor, as well as the propriety of releasing someone who had committed these vicious murders, put them in a catch-22 position, and we just don't see that there is a substantive due process claim that can be articulated and shown on the facts presented here. I see I'm out of time. Thank you very much. Thank you, Mr. Chauvin. Your case is under submission. Last case for today, Thomas v. Emeritus, life and